**The STATE of Ohio, Appellee,**

**v.**

**TROUTMAN, Appellant.**

[Cite as *State v. Troutman* (1991), 71 Ohio App.3d 755.]

Court of Appeals of Ohio,
Lorain County.

No. 90CA004869.

Decided April 3, 1991.

*Gregory A. White,* Prosecuting Attorney, for appellee.

*Jack W. Bradley,* for appellant.

*Per Curiam.*

Randall C. Troutman appeals his convictions of intimidation with a physical harm specification and assault.

On Saturday morning, November 19, 1988, John Toth, a registered sanitarian with the Lorain County Health Department went to the home of Troutman to investigate a report that Troutman was installing a septic tank without authorization. Toth was familiar with Troutman whom he had met in the summer of 1986 while inspecting Troutman's septic system on that earlier occasion. He initially drove his private vehicle past the Troutman property and saw that the septic tank was installed without the proper authorization. Toth parked his vehicle in the street, walked to the rear of the home and closely viewed the septic tank excavation area. Toth then walked toward the home, looked in a large window and motioned with his hand to the person standing on the other side of the window. He began walking toward the front yard.

The person that Toth had motioned to in the home was seventeen-year-old Trina Troutman. Trina testified that she was wearing a nightgown while cooking breakfast and became scared when she saw the strange man looking at her. She ran crying to her father's bedroom and said that a stranger was looking in the window. Troutman testified that he jumped out of bed, threw on his bathrobe, proceeded outside and yelled "hey" to the man in his yard.

The testimony is conflicting as to what followed. Toth testified that he identified himself and produced his identification badge whereupon Troutman hit his wrist, accused him of trespassing and backed him off of the property. Toth testified that when he turned to walk away, Troutman grabbed him and started yelling:

"Q. What did he do?

"A. He said, 'You didn't see anything, did you?'

" * * *

"I said, 'Mr. Troutman, we have to talk about this. I'm just here doing my job.'

"Then he said, 'You didn't see anything or hear anything, did you, m_____ f_____?' I'm in disbelief.

"Q. Then what else?

"A. Then he started, he started shaking me around, like that. And he said, 'If you ever come back again I'll have your m_____ f_____ a___.' More violent than that. He has a hundred pounds on me.

"At that point, he was shaking me up continuously. Then out of the clear blue sky, he says, 'I think you were after my daughters, weren't you?' He's making a statement, like the statement about trespassing, wanting me to agree, and then hit me or something.

"He said, 'I think you're after my daughters.'

"And I said, 'Mr. Troutman,' I'm amazed, he's like this, spitting in my face, and everything, had me off the ground. * * * "

Troutman testified as follows:

"A. Well, the first thing I remember is my daughter telling me there was somebody peeking in the window and she didn't know who it was. She had tears in her eyes. I didn't know if she had been hurt or anything. I didn't know what was going on.

"I sleep in the raw, and I made her leave the room before I got up and I put my robe and flip-flops on, and out the door I went.

"When I got out to the door, I yelled, hey. And just about that time I looked up, there was Mr. Toth.

"First thing he said to me was, 'You know me.'

"And I said, 'No, I don't know you. Even if I did know you, it doesn't give you the right to come on my property peeking in the window.' I told him to get the hell out.

"He said, 'No, I'm here about your septic tank.'

"And I said, 'I don't care why you're here, you got no reason. I'm asking you to leave.'

"He said, 'You put in a fiber glass septic tank.'

"And I said, 'No, I didn't.'

"He said, 'You did.'

"And I said, 'Are you calling me a liar?'

"And he said, 'Yes I am.'

"And I said, 'I'm telling you one more time to get off my property or I'll put you off.'

"And he said, 'I don't have to leave.'

"So I reached up with my left hand—

"Q. Why did you reach up with your left hand?

"A. Because I was hurt at Ford, and—

"Q. Did you get hurt at work?

"A. Yes.

"Q. Go on.

"A. I grabbed him on his right shoulder.

"Q. Did you grab his coat?

"A. He didn't have a coat on, he had a dark blue hooded sweatshirt. That's what he had on the outside.

"So he got to the street. He got over by his car, and he went into his pocket and he pulled out ID, it wasn't that badge, it was different, it had a pin on the back of it, and he picked it up and showed it to me over the roof of his car; and he said, 'I'm John Toth from the Sanitation Department, and you are going to jail.'

"And I said, 'What for?'

"And he said 'For putting in an illegal septic tank.'

"And I said, 'And that's a reason for you to peek in my window?' * * *"

Toth reported the incident to his supervisor and was told to file a police report, which he did.

### Assignment of Error I

■ "The trial court erred in permitting the jury to consider the intimidation charge when the alleged victim's conduct was unreasonable."

Troutman argues that the trial court should have granted an acquittal on the intimidation charge.

Crim.R. 29 provides in part:

"(A) The court on motion of a defendant or on its own motion, after the evidence on either side is closed, shall order the entry of a judgment of acquittal of one or more offenses charged in the indictment, information, or complaint, if the evidence is insufficient to sustain a conviction of such offense or offenses. * * *"

It is a well-established principle of Ohio law that a court, acting under Crim.R. 29, shall not order a judgment of acquittal if the evidence is such that reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt. *State v. Bridgeman* (1978), 55 Ohio St.2d 261, 9 O.O.3d 401, 381 N.E.2d 184, syllabus.

Troutman was convicted of intimidation, an offense which is described in R.C. 2921.03(A) as follows:

"No person, knowingly and by force or by unlawful threat of harm to any person or property, shall attempt to influence, intimidate, or hinder a public servant, party official, or witness in the discharge of his duty."

At trial, the state presented testimony establishing the elements of intimidation. We are convinced that the decision of the jury, the trier of fact which resolves conflicting testimony, concerning the intimidation of Toth by Troutman was based on sufficient evidence. The first assignment of error is overruled.

### Assignment of Error II

■ "The trial court erred in not permitting the defendant to present evidence regarding the impeachment of a police officer's memory and bias."

Troutman sought to introduce the testimony of Richard Luczkowski, who would have testified to the conversation he heard between Troutman, Troutman's wife and two police officers. Specifically, Luczkowski would have testified that: (1) Officer Palmer told Troutman that he was here the last time Troutman went down, and (2) that Troutman's wife asked the officer why Toth had been peeking in their window to which Officer Lewis responded that Toth probably wanted to see if anyone was home. Neither Officer Palmer nor Troutman's wife testified at trial.

The trial judge ruled that such evidence was inadmissible hearsay.

Hearsay is defined in Evid.R. 801(C) as:

"[A] statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted."

If a statement is not offered to prove its truth but is offered to prove that the statement was made, it is not hearsay.

In the present case, the statements were admissible for the purpose of attacking the police officer's credibility through a showing of bias, prejudice and faulty memory. The trial court erred in excluding the proffered testimony. However, we find it harmless. The second assignment of error is overruled.

The judgment of the trial court is affirmed.

*Judgment affirmed.*

BAIRD, P.J., and REECE, J., concur.

CACIOPPO, J., dissents.

CACIOPPO, Judge, dissenting.

I respectfully disagree with the majority's disposition of the first assignment of error. The purpose of a motion for a judgment of acquittal is to test the sufficiency of evidence and, when such evidence is insufficient, to take the case from the jury. *Dayton v. Rogers* (1979), 60 Ohio St.2d 162, 163, 14

O.O.3d 403, 404, 398 N.E.2d 781, 782. The prosecutor was required to prove that Troutman attempted to influence, intimidate, or hinder Toth in inspecting the septic tank and reporting any violation, and, that the attempt was made knowingly by force or threat of force.

Although the evidence was sufficient to support the finding that Troutman threatened harm to Toth, it did not establish that this was for the purpose of intimidating the sanitarian from further investigating and reporting Troutman for an illegal septic system. On the contrary, the evidence showed that the purpose of Troutman's conduct was to protect his family by removing from his property a man who allegedly had been peeping in the windows. Since I believe the state failed to prove its case, I would sustain the first assignment of error and reverse the judgment of the trial court.