OPINION
Defendant-appellant Willie Maddox appeals his convictions of assault and criminal damaging which were entered after a bench trial in the Youngstown Municipal Court. For the following reasons, the judgment of the trial court is affirmed.
 STATEMENT OF FACTS
In the early hours of April 21, 1998, Deborah Wilkins called the Youngstown Police Department to report a physical altercation between herself and appellant. When the police arrived, Ms. Wilkins exited her home, and the police noticed that her nose was scratched. The police entered the house and arrested appellant. Since appellant's hand was cut, he was transported to the hospital where he received stitches. In the house, the police found a broken knife and broken plates and noticed a fax machine overturned on the floor. Ms. Wilkins told the police that she picked up the knife in self-defense and that appellant's hand got cut as a result.
Two criminal complaints were filed against appellant that day. Appellant was charged with first degree misdemeanor assault in violation of R.C. 2903.13 (A), for knowingly causing or attempting to cause physical harm to Ms. Wilkins by scratching the right side of her nose. Appellant was also charged with second degree misdemeanor criminal damaging in violation of R.C.2909.06 (A) (1) for knowingly causing physical harm to Ms. Wilkins' fax machine and dishes.
The case was tried to the court on June 4, 1998. At trial, Ms. Wilkins testified that appellant came to her home to dissuade her from breaking up with him. She said he became angry and started to choke her. When Ms. Wilkins' daughter inquired of the noise, appellant released her. Soon thereafter, appellant's anger at Ms. Wilkins returned, and he allegedly hit her. She testified that she picked up a kitchen knife to ward off appellant. However, appellant grabbed the knife from her, which is how he got cut. Ms. Wilkins stated that appellant then entered her office and began stabbing her fax and copy machines. She also claims that he cut her phone line and a jacket.
On the contrary, appellant testified that it was Ms. Wilkins who was angry because appellant would not break up with his other girlfriend. Appellant claimed that Ms. Wilkins wanted. "nose stuff." He said that Ms. Wilkins pulled a knife on him, and while trying to disarm her, he scratched her nose and knocked over her fax machine. He stated that a dish broke when Ms. Wilkins attempted to throw hot water at him. He denied choking and hitting Ms. Wilkins. He also denied intentionally breaking any items in Ms. Wilkins' home.
Thereafter, the court found appellant guilty of both offenses. Sentencing occurred on July 2, 1998. On the assault charge, appellant was sentenced to sixty days in jail and fined $250 plus costs; however, the jail sentence, the fine and the costs were suspended on the condition that appellant successfully complete one year of probation. On the criminal damaging charge, appellant was sentenced to sixty days in jail and fined $500 plus costs. This jail sentence and fine were suspended on the condition that appellant make full restitution in the amount of $325. Appellant was placed on one year probation for this offense which could terminate sooner if he paid the restitution. The within appeal followed.
 ASSIGNMENT OF ERROR
Appellant's sole assignment of error provides:
 "THE TRIAL COURT ERRED IN REFUSING TO ALLOW THE DEFENSE AN OPPORTUNITY TO HAVE A THOROUGH EXAMINATION OF ITS OWN WITNESS REGARDING RELEVANT EVIDENCE PERTAINING TO THE DEFENDANT'S OBSERVATIONS AND STATE OF MIND."
Appellant argues that his entire defense was prejudicially affected by an allegedly unreasonable evidentiary ruling and the resulting limitation on his testimony which occurred in the following context:
 "A. She got mad at me because I wasn't moving fast enough for her.
Q. Moving fast enough for her in what way?
 A. I was supposed to leave Debbie, get my own place. And she got upset with me about that. She said, `You can give this bitch everything but you can't give me nothing.'
Q. Slow down for me. You weren't moving fast enough for her?
A. Right. She said I wasn't moving fast enough for her.
Q. In what way?
A. By moving.
Q. Where were you supposed to be moving to?
A. I was to get another apartment.
Q. You were seeing another woman?
A. Yes.
 Q. It is your contention she wanted you to leave this other woman?
A. She wanted me to leave, yes.
Q. So in the course of this discussion she became upset with you?
A. Yes, she did.
Q. What happened after that discussion?
 A. She said, `You are not going to leave her?' I said, `No. I am not going to leave her.' She said she wanted me to get her some nose stuff. That's all she ever wanted.
 Q. Let me clarify that. Did she ask you for anything at that point?
A. Yes, she did.
Q. What did she ask you?
A. Give her some money, get her some stuff for her nose.
MR. MAILLIS: Objection.
THE COURT: Sustained.
MS. AKINS: Can I have a basis for that objection?
 MR. MAILLIS: It has nothing to do with whether or not, what he claims she said that she wanted him to get.
 MS. AKINS: Your Honor, it is no more unlikely his version of the events than hers and if indeed there was a dispute her contention is that the dispute was because he was angry, not because she was angry. He has as much right to testify as to what she asked him for as she did to say this was about breaking up.
 THE COURT: Again, I will sustain the objection. I understand your point, Counsel. The Court's observation is that the actual harm or activity that occurs as opposed to the precipitating reasons. I will sustain the objection.
 MS. AKINS: I accept the Court's ruling but note for the record that I am taking exception to the ruling.
Q. It is your contention she became irate?
A. Yes, she was. She went off.
Q. In what way?
 A. We were in the office. She had a butcher knife and she come back in there. She said, You can give this bitch everything but you can't give me nothing. ` * * *." (Tr. 29-32)
The state appears[1] to have argued that appellant's testimony about Ms. Wilkins asking for money and "nose stuff" was irrelevant and thus inadmissible pursuant to Evid.R. 402. Appellant argues that this testimony was relevant to impeach the credibility of Ms. Wilkins as to the genesis of the argument and to show that she had a reason to lie. Appellant points to Evid.R. 616, which allows impeachment of a witness by extrinsic evidence in the form of contradictory testimony in order to show that the witness is biased, prejudiced or has a motive to misrepresent. Appellant further argues that he was precluded from explaining his state of mind and thus prevented from successfully arguing self-defense.
 ANALYSIS
A trial court has broad discretion in admitting and excluding evidence. State v. Robb (2000), 88 Ohio St.3d 59, *9; State v.Apanovitch (1987), 33 Ohio St.3d 19, 25. It thus follows that an appellate court shall not reverse an evidentiary ruling absent an abuse of discretion which amounts to prejudicial error. State v.Siler (June 30, 1999). Mahoning App. No. 95 CA 207, unreported, 6 (also stating that a trial court has wide discretion to admit or exclude evidence under Evid.R. 616).
Contrary to appellant's assertions, he was permitted to present his version of why the argument started. He testified that Ms. Wilkins was mad because he would not move out of the apartment that he shared with his other girlfriend. He also stated that Ms. Wilkins "wanted me to get her some nose stuff." (Tr. 30). The state did not object at this point. It was only after appellant again stated that Ms. Wilkins wanted him to "Give her some money, get her some stuff for her nose" that the state objected. (Tr. 31). This portion of appellant's testimony was merely cumulative to the testimony appellant had just given. Pursuant to Evid.R. 403 (B), relevant evidence may be excluded if its probative value is substantially outweighed by the policy that court's should avoid the needless presentation of cumulative evidence. In so stating, the court could have determined that one reference to Ms. Wilkins wanting drugs was enough.
Moreover, the record reveals that appellant presented his views on allocation of fault for the fracas. He testified that Ms. Wilkins was the attacker and that he accidentally scratched her when he was attempting to disarm her. He also stated that the fax machine fell during this scuffle. Further, he related that Ms. Wilkins threw hot water on him causing a plate to break. Thus, appellant was not prevented from presenting his self-defense argument or from showing that Ms. Wilkins had motive to lie because she was the attacker.
Appellant does not explain the basis for his contention that his self-defense argument required reliance on background information. For the most part, the self-defense argument arose from appellant's testimony that Ms. Wilkins was the aggressor who initiated an assault upon him with a knife. See State v. Austin
(1996), 115 Ohio App.3d 761, 764 (where we stated that the defendant's self-defense explanation did not revolve upon background information, such as the victim's character, but revolved upon the allegation that the victim drew a gun and pointed it at the defendant).
Appellant suggests that he was prohibited from testifying about his state of mind. However, he does not reveal here nor did he proffer to the trial court as to what state of mind he is referring. See State v. Bereschik (1996), 116 Ohio App.3d 829,836 (where this court noted that the defendant must proffer into evidence what he would have testified to had he been permitted to continue). Moreover, when state of mind is admissible, reasons for a particular state of mind generally are not. See State v.Reynolds (1998), 80 Ohio St.3d 670, 677-678.
Lastly, even if the trial court should have allowed appellant to testify more about Ms. Wilkins' alleged request for drugs, the exclusion was not prejudicial. See State v. Troutman (1991),71 Ohio App.3d 755, 759 (holding harmless a trial court's error in excluding testimony offered to impeach a witness through a showing of bias and prejudice). As aforementioned, the court heard appellant imply that Ms. Wilkins was jealous about his living with and buying things for another woman, listened to appellant accuse Ms. Wilkins of wanting "nose stuff," and heard appellant testify that Ms. Wilkins became irate. Any motivation for Ms. Wilkins to testify untruthfully was set forth most prominently in appellant's story that Ms. Wilkins was the aggressor. Yet, after reviewing the factors affecting witness credibility, the court found Ms. Wilkins to be more credible. SeeState v. DeHass (1967), 10 Ohio St.2d 230, 231.
The court was informed of the motivations which may have influenced the testimony of Ms. Wilkins. Hence, appellant's defense was not prejudiced when his counsel was precluded from delving deeper into Ms. Wilkins' alleged request for drugs. SeeState v. Brooks (1996), 75 Ohio St.3d 148, 152 (stating an error in denying cross-examination about the witness's complicity charge was harmless where the jury was aware of motivations which might have influenced the witness's testimony). Therefore, this assignment of error is overruled.
For the foregoing reasons, appellant's convictions are hereby affirmed.
COX, P.J., dissents; see dissenting opinion, DONOFRIO, J.,concurs.
APPROVED:
 _________________________ JOSEPH J. VUKOVICH, JUDGE
[1] Note, the state's grounds for objection as stated at trial are unclear, and the city prosecutor's office failed to submit an appellate brief.